## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBORAH TWIGG<br>118 Avenue E<br>Schuylkill Haven, PA 17972<br><br>   Plaintiff,<br><br>  v.<br><br>SCHUYLKILL COUNTY<br>401 N. 2nd Street<br>Pottsville, PA 17901<br>  and<br>READING-BERKS HR MANAGEMENT,<br>LLC d/b/a HUBRIC RESOURCES<br>625 North Park Road<br>Wyomissing, PA 19610<br>  and<br>GARY BENDER<br>401 N. 2nd Street<br>Pottsville, PA 17901<br>  and<br>THOMAS HUBRIC<br>625 North Park Road<br>Wyomissing, PA 19610<br>  and<br>DOREEN KUTZLER<br>625 North Park Road<br>Wyomissing, PA 19610<br><br>   Defendants. | CIVIL ACTION<br><br>No.:<br><br><br><br>**JURY TRIAL DEMANDED** |

### CIVIL ACTION COMPLAINT

Plaintiff, Deborah Twigg (hereinafter "Ms. Twigg") by and through her undersigned counsel, hereby avers as follows:

### INTRODUCTION

1. This action has been initiated by Ms. Twigg against Schuylkill County ("Defendant SC"), Reading-Berks HR Management ("Defendant RBHR"), Gary Bender

("Defendant Bender"), Tom Hubric ("Defendant Hubric"), and Doreen Kutzler ("Defendant Kutzler") (*hereinafter* collectively referred to as "Defendants") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII - 42 U.S.C. §§ 2000, *et. seq*.) and the Pennsylvania Human Relations Act ("PHRA"). As a direct consequence of Defendants' unlawful actions, Ms. Twigg seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Ms. Twigg claims because this civil action arises under laws of the United States.

3. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny. This Court has supplemental jurisdiction over Ms. Twigg's state-law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as her federal claims asserted herein.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and in addition, Defendants are deemed to reside where they are subject to personal jurisdiction, rendering Defendants residents of the Middle District of Pennsylvania.

5. Ms. Twigg is proceeding herein under Title VII and has properly exhausted her administrative remedies by timely dual-filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC") and by filing the instant lawsuit within ninety (90) days of receiving a

notice of dismissal and/or right to sue letter from the United States Department of Justice and that one year has passed since dual-filing her Charge with the PHRC.

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Ms. Twigg is an adult individual, with an address as set forth in the caption.

8. Defendant SC is a municipality located in the Commonwealth of Pennsylvania.

9. Defendant SC owns, operates, manages, directs and controls the Schuylkill County Courthouse.

10. Defendant RBHR, is a domestic business entity, organized and existing under the laws of the Commonwealth of Pennsylvania.

11. At all times material, Defendant RBHR contracted with Defendant SC to provide Human Resources consulting services for Defendant SC.

12. At all times material, Defendant RBHR acted as an agent for, and with the express, or implied authority of, Defendant SC.

13. At all times material, Defendant RBHR maintained and operated a principal place of business in Pennsylvania at 625 North Park Rd., Wyomissing, PA 19610.

14. Defendant Bender was, and is, the County Administrator for Defendant SC.

15. At all times material, Defendant Bender was authorized by the County to make tangible employment decisions and otherwise exercise supervisory authority over employees under the supervision of the County Administrator.

16. Defendant Hubric was, and is, the President and Founder of Defendant RBHR.

17. At all times material, Defendant Hubric was authorized by Defendant SC to make employment decisions, including the decision to select employment applicants for interviews.

18. At all times material, employees of Defendant RBHR acted with the express or implied authority of Defendant Hubric.

19. Defendant Kutzler was, and is, an employee of Defendant RBHR and acted as the Human Resources Director for Defendant SC.

20. At all times material, Defendant Kutzler was authorized by Defendant SC and/or Defendant RBHR to make employment decisions, including the decision to select employment applicants for interviews.

21. Upon information and belief, because of their interrelation of operations, common management, centralized control of labor relations, common oversight of employee relations, and other factors, Defendant SC and Defendant RBHR are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single and/or joint employer for purposes of the instant action.

22. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

### -Ms. Twigg's Prior Employment with Schuylkill County-

23. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

24. On or about January 8, 2018, Ms. Twigg was hired into the position of Human Resources Director for Defendant SC.

25. In or about May 2020, Ms. Twigg received notice that multiple female employees had made very serious allegations of sexual harassment, sexual assault, and retaliation against Schuylkill County Commissioner, George Halcovage.

26. As Human Resources Director, Ms. Twigg immediately launched an investigation into the allegations.

27. On or about June 24, 2020, Ms. Twigg completed her investigation and prepared a report detailing her findings and conclusions to Defendant SC's Commissioners and Solicitors.

28. On or about June 30, 2020, Schuylkill County Solicitor, Glenn Roth, issued a press release regarding Ms. Twigg's investigation of Halcovage's conduct, which stated, in relevant part:

> […] The County conducted its internal investigation through HR as it does with any other allegation involving County personnel. This investigation was conducted as expeditiously as possible but took some time given the number of interviews that needed to be conducted and that there were multiple attorneys involved. While many of the allegations made by the Employees were denied by Commissioner Halcovage, it is apparent, based on the County's internal investigation, that Mr. Halcovage has violated the Sexual Harassment Policy #2005-18 (Revised September 2013), the Conduct and Disciplinary Action Policy #2005-19; and the Physical and Verbal Abuse Policy #2007-02 (Revised March, 2007). If this investigation involved a County department head, the department head would be suspended immediately pending investigation followed by a recommendation of employment termination. However, neither County Administration nor other county commissioners may discipline a fellow county commissioner or remove him from office absent criminal conviction or impeachment. Given that this incident does involve personnel, involves multiple attorneys, and may proceed to litigation, the County may not provide specific details of the allegations made by the Employees or the specific findings of the internal investigation.

29. On or about August 12, 2020, Ms. Twigg tendered her resignation effective September 4, 2020 stating:

5

> It is with mixed emotions that I submit my Letter of Resignation effective September 4, 2020. There was a time when I loved coming to work here at the Courthouse. I have stated from my first interview that I would not do anything that was illegal, unethical or immoral. I have also stated from the beginning of my employment "just do the right thing." Over the past ten months I have dreaded coming to work almost every day. It is clear that my HR Philosophy is different from the ruling majority at Schuylkill County. Because I have not waivered in my principles, philosophy and/or beliefs, I have suffered instances of undermining, intimidation and manipulation.

30. Indeed, the central conclusion to be drawn from Ms. Twigg's resignation letter is that she resigned principally because she had refused to do "anything that was illegal, unethical or immoral" and because she "suffered instances of undermining, intimidation and manipulation" in response to her participation in investigating allegations of sexual harassment and discrimination.

31. At the time of her resignation, Ms. Twigg's work performance, integrity, and professionalism had never been questioned and she was lauded as the best HR Director in 40 years.

### -  Ms. Twigg's Participation in the Halcovage Civil Rights Litigation -

32. On March 16, 2021, Jane Doe employees of Defendant SC filed a federal civil rights lawsuit in the United States District Court for the Middle District of Pennsylvania (Civil Action Number 3:21-cv-00477) against Schuylkill County Commissioner – George Halcovage, County Solicitor – Glenn Roth, Schuylkill County Administrator – Defendant Bender, and HR Representatives – Heidi Zula and Defendant Kutzler (hereafter referenced as the "Halcovage Litigation").

6

33. In or about November 2021, the Pennsylvania state House of Representatives voted to open an investigation into Commissioner Halcovage to determine whether to initiate impeachment proceedings to remove him from office.[1]

34. On or about April 1, 2022, the United States Department of Justice filed a motion to intervene in the Halcovage Litigation.[2]

35. On or about September 15, 2022, Ms. Twigg testified before the PA House Judiciary Subcommittee investigating Commissioner Halcovage.

36. On or about September 30, 2022, and November 30, 2022, Ms. Twigg sat for two depositions in the Halcovage Litigation and gave a total of 13 hours of sworn testimony.

37. It is alleged that Ms. Twigg's testimony in the Halcovage Litigation was favorable to the Jane Doe plaintiffs, and exposed Schuylkill County and the named individual defendants, including Defendant Bender and Defendant Kutzler to civil liability.

38. It is alleged that Ms. Twigg's participation in the Halcovage Litigation is protected activity under Title VII.

39. On January 13, 2023, Defendant SC entered into a Consent Decree with the United States Department of Justice.

40. The Consent Decree laid out a detailed plan the County had agreed to implement as a direct result of the Halcovage Litigation. Among other things, the Consent Decree provides that Defendant SC "shall not engage in any act or practice that (a) discriminates against any

---

[1] https://www.repschemel.com/News/24019/Latest-News/Schemel-Announces-House-Committee-Investigation-of-Schuylkill-County-Commissioner-George-F-Halcovage-Jr
[2] https://www.justice.gov/opa/pr/justice-department-moves-intervene-sexual-harassment-lawsuit-against-schuylkillcounty

7

employee or applicant on the basis of sex in violation of Title VII or (b) constitutes retaliation in violation of Title VII."

41. Relevant here, the Consent Decree also required the County to appoint an "EEO Officer" to (1) "ensure that the County implements the relief required by this Decree," and (2) "ensure that investigations of prohibited forms of harassment and retaliation are investigated in accordance with the terms of this Decree."

### - Ms. Twigg Reapplies for HR Director of Schuylkill County -

42. In or about mid-February 2023, Ms. Twigg learned from County Commissioner, Gary Hess, that Defendant SC was actively hiring for the HR Director position that she previously had held for nearly 3 years.

43. Ms. Twigg, who happened to be searching for employment, believed that the ongoing Halcovage Litigation and the Dept. of Justice Consent Decree would provide protection from the unchecked discrimination and retaliation she had witnessed and experienced in the months leading up to her resignation in 2020, as well as empower her to help create a workplace free from unlawful discrimination, harassment, or retaliation.

44. Ms. Twigg believed the environment would be different than when she resigned in 2020, and she wanted to go back because she felt she could make a difference in Schuylkill County.

45. On or about February 28, 2023, Ms. Twigg submitted her resume to Ann Kraft ("Ms. Kraft"), an HR officer at Defendant SC and former colleague of Ms. Twigg.

46. The same day, Ms. Kraft informed Ms. Twigg that her resume had been sent to Defendant Bender for review along with five (5) other resumes.

8

47. Ms. Kraft told Ms. Twigg that Defendant Bender had instructed her that he wanted to see all resumes immediately.

48. A few days later, Ms. Kraft informed Ms. Twigg that she also had to submit her resume and application through Indeed.com.

49. The posted job description for the HR Director Position specifically stated that the employee would report to the County Administrator – i.e., Defendant Bender.

50. On or about March 7, 2023, Ms. Twigg submitted her resume, again, through Indeed.com as directed by Ms. Kraft.

51. On or about March 8, 2023, Ms. Twigg received an email notifying her that her Indeed application had been "viewed."

52. On or about March 20, 2023, Ms. Twigg received an email notifying her that "Your skills and qualifications have been reviewed and you have not been selected for an interview."

53. At all times material, Ms. Twigg was objectively qualified for the HR Director position to which she applied because of her 30+ years of experience in HR, and because she successfully held that exact position for nearly 3 years.

54. Ms. Twigg's protected activity is the only logical basis for the decision to not even select Ms. Twigg for an interview.

55. The retaliatory motivation is readily apparent from the fact that Defendants had declined **to even interview** Ms. Twigg for a position she had already held and excelled in for nearly 3 years.

56. On or about March 21, 2023, Ms. Twigg submitted a formal complaint to DOJ attorneys, Amber Fox (hereinafter "Attorney Fox") and Allan Townsend (hereinafter "Attorney

Townsend"), alleging that her non-selection for an interview was retaliation for her participation in the Halcovage Litigation and requesting an investigation pursuant to the terms of the Consent Decree.

57. Also copied on the March 21, 2023, email were Defendant Kutzler and County Commissioner, Gary Hess.

58. As a result of Ms. Twigg's March 21, 2023, email retaliation complaint, Attorney Townsend scheduled an interview with Ms. Twigg.

59. On or about April 4, 2020, Ms. Twigg participated in an interview with Attorney Townsend.

60. On or about April 5, 2023, Ms. Twigg participated in an interview with Denise Elliot, Esq. (hereinafter "Attorney Elliot") in her capacity as EEO Officer for Defendant SC under the Consent Decree.

61. At all times material, Attorney Elliot was appointed by Defendant SC as the EEO Officer for the County pursuant to the terms of the Consent Decree.

62. On or about June 22, 2023, Attorney Elliot provided a memorandum to Ms. Twigg informing her that the internal investigation of her claims was complete and had concluded, "There is no evidence to support a finding of retaliatory intent in the decision not to interview Ms. Twigg for the HR Director position."

63. Concerning the decisionmakers, the Investigation Memo states, in relevant part, "[T]he decision to not interview/screen Ms. Twigg was made by Hubric Resources personnel, in consultation with counsel, and not by the County or Mr. Bender. Hubric Resources decided who would be subject to the initial screening interviews."

64. Importantly, Defendant Kutzler was and is an employee of Defendant RBHR and was a named defendant in the Halcovage Litigation.

65. Moreover, all Defendant RBHR's employees have knowledge of the Halcovage Litigation and Ms. Twigg's involvement in investigating the claims and providing truthful testimony which was favorable to .

66. It is specifically alleged that Defendant Bender had knowledge of Ms. Twigg's application for the HR Director Position in March 2023, and either directed or ratified the decision to reject Ms. Twigg from consideration without even so much as conducting an interview.

67. Concerning the proffered non-retaliatory basis for the decision, the Investigation Memo states, in relevant part, "Rather, when Hubric Resources personnel noted that Ms. Twigg was a former County employee (based on her resume), they obtained a copy of her resignation letter, reviewed the same, **consulted with counsel** and determined that based on the circumstances of her resignation she would not, ultimately, be a successful candidate and thus did not warrant a screening interview. This decision was legitimate, non-retaliatory and non-discriminatory."

68. The Investigation Memo does not identify the "counsel" consulted in the decision- making process, but, upon information and belief, it is attorney Alvin Marshall, Esq.

69. It is specifically alleged that Defendant SC and Defendant RBHR waived attorney-client privilege to the extent either intends to rely on an "advice of counsel" affirmative defense to Ms. Twigg's retaliation claims, as outlined in the Investigation Memo.

70. To the extent any Defendants intend to rely on the non-retaliatory basis proffered in the Investigation Memo, it is alleged that the circumstances of Ms. Twigg's resignation in September 2020 are in and of itself protected opposition activity under Title VII.

### COUNT I
### Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")
### (Retaliation)
### -Against Defendant SC and Defendant RBHR Only-

71. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

72. At all times material, Ms. Twigg was objectively qualified for the HR Director position with Defendant SC to which she applied around March 7, 2023.

73. Ms. Twigg claims that the decision not to select her for an interview and thereby remove her from consideration for hiring and/or failing to hire her were adverse employment actions within the scope of the protections of Title VII.

74. Ms. Twigg engaged in protected activity under Title VII, including, but not limited to:

   a. Investigating claims of sexual harassment against County elected officials while employed as HR Director of Schuylkill County;

   b. Issuing findings and conclusions sustaining many of the allegations;

   c. Opposing any conduct she reasonably believed to be illegal (such as sexual harassment) while employed as HR Director of Schuylkill County;

   d. Providing documentary evidence in the Halcovage Litigation;

   e. Giving 13 hours of truthful deposition testimony in the Halcovage Litigation which is alleged to have been favorable testimony for the Jane Doe plaintiffs.

75. It is specifically alleged that all decision-making agents or employees of both Defendant SC and Defendant RBHR– including Defendants Bender, Hubric, and Kutzler – had knowledge of Ms. Twigg's protected activity as of March 2023.

76. It is specifically alleged that the decision to reject Ms. Twigg from consideration for the HR Director position without even conducting an interview required the express or implied authority of County Administration officials involved in the Halcovage Litigation, including Defendant Bender.

77. It is specifically alleged that there is no objective basis unrelated to Ms. Twigg's protected activity for anyone to have rejected Ms. Twigg for a screening interview or further employment with Defendant SC.

78. Defendants refused to interview Ms. Twigg and/or hire for a position for which she was objectively qualified for because she engaged in the aforesaid protected activity.

79. Defendants' actions as aforesaid constitute violations of Title VII.

### COUNT II
### Violations of the Pennsylvania Human Relations Act ("PHRA")
### (Retaliation)
### -Against Defendants SC and RBHR-

80. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

81. At all times material, Ms. Twigg was objectively qualified for the HR Director position with Defendant SC to which she applied around March 7, 2023.

82. Ms. Twigg claims that the decision not to select her for an interview and thereby remove her from consideration for hiring and/or failing to hire her was an adverse employment actions within the scope of the protections of Title VII.

83. Ms. Twigg engaged in protected activity under Title VII, including, but not limited to:

   a. Investigating claims of sexual harassment against County elected officials while employed as HR Director of Schuylkill County;

   b. Issuing findings and conclusions sustaining many of the allegations;

   c. Opposing any conduct she reasonably believed to be illegal while employed as HR Director of Schuylkill County;

   d. Providing documentary evidence in the Halcovage Litigation;

   e. Giving 13 hours of deposition testimony in the Halcovage Litigation, which is alleged to have been favorable for the Jane Doe plaintiffs.

84. It is specifically alleged that all decision-making agents or employees of both Defendant SC and Defendant RBHR– including Defendants Bender Hubric and Kutzler – had knowledge of Ms. Twigg's protected activity as of March 2023.

85. It is specifically alleged that the decision to reject Ms. Twigg from consideration for the HR Director position without even conducting an interview required the express or implied authority of County Administration officials involved in the Halcovage Litigation, including Defendant Bender.

86. It is specifically alleged that there is no objective basis unrelated to Ms. Twigg's protected activity for anyone to have rejected Ms. Twigg for a screening interview or further employment with Defendant SC

87. Defendants refused to interview Ms. Twigg and/or hire for a position for which she was objectively qualified for because she engaged in the aforesaid protected activity.

88. Defendants' actions as aforesaid constitute violations of Title PHRA.

## COUNT III
### Violations of the Pennsylvania Human Relations Act ("PHRA")
**(Aiding & Abetting)**
**-Against Individual Defendants-**

89. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

90. PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: "For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

91. Defendants engaged in an unlawful discriminatory practice in violation of PHRA § 955(e) by aiding, abetting, inciting, compelling and/or coercing the discriminatory conduct.

**WHEREFORE**, Ms. Twigg prays that this Court enter an Order providing that:

A. Defendants are to promulgate and adhere to a policy prohibiting sexual harassment, discrimination, and retaliation in the future against any employee(s);

B. Defendants are to compensate Ms. Twigg, reimburse Ms. Twigg, and make Ms. Twigg whole for any and all pay and benefits Ms. Twigg would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, and pension.

C. Ms. Twigg is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by Defendants' actions;

D. Ms. Twigg is to be awarded punitive damages as permitted by applicable law in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their

willful, deliberate, malicious, and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

    E.    Ms. Twigg is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate;

    F.    Ms. Twigg is to be awarded the costs and expenses of this action and a reasonable attorney's fees as provided by applicable federal and state law; and

    G.    Ms. Twigg is to receive a trial by jury.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
8 Interplex Drive
Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801
(215) 639-4970 fax
akarpf@karpf-law.com

Dated: November 6, 2024

16