## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DEBORAH TWIGG,                             :    No. 3:24cv1914
       **Plaintiff**                         :
                                      :    **(Judge Munley)**
     **v.**                                  :
                                        :
SCHUYLKILL COUNTY;                         :
READING-BERKS HR                           :
MANAGEMENT, d/b/a HUBRIC                    :
RESOURCES; GARY BENDER;                     :
THOMAS HUBRIC; and DOREEN                   :
KUTZLER,                                    :
       **Defendants**                       :

## <u>MEMORANDUM</u>

Plaintiff Deborah Twigg served as the Human Resources Director ("HR Director") for Defendant Schuylkill County until she resigned in September 2020. Thereafter, Twigg provided favorable testimony in a separate civil rights and employment discrimination case filed by Jane Doe county employees against the county, a county commissioner, and at least two of the named defendants in this action (hereinafter "Doe Litigation"). In early 2023, as the Doe Litigation proceeded in this court, Twigg applied for a vacant position at the county, her previous position of HR Director. Schuylkill County, however, did not hire the plaintiff, nor did Schuylkill County interview the plaintiff.

Twigg thus asserts that defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Pennsylvania Human

Relations Act, 43 PA.. STAT. § 951, *et seq.* ("PHRA") when they removed her from consideration and did not hire her for the HR Director position.  Twigg contends that Schuylkill County retaliated against her for protected activity related to the Doe Litigation and that County Administrator Gary Bender, among the other individually named defendants, violated the PHRA by aiding and abetting discrimination.

Before the court is a motion to dismiss filed by Defendants Schuylkill County and County Administrator Bender (collectively "County Defendants"). Having been fully briefed, this matter is ripe for disposition.

**Background**

Approximately two years into her tenure as Schuylkill County's HR Director, in May 2020, Twigg received notice that multiple female employees were making sexual assault, sexual harassment, and retaliation allegations against Schuylkill County Commissioner George Halcovage.[1] (Doc. 14, Am. Compl. ¶¶ 24–25). Twigg investigated the allegations and prepared a report detailing her findings and conclusions. Id. ¶ 26.  She provided her report to the county commissioners and county solicitors on or about June 24, 2020. Id.

---

[1] These background facts are derived from plaintiff's amended complaint.  At this stage of the proceedings, the court must accept all factual allegations in the amended complaint as true. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  The court makes no determination, however, as to the ultimate veracity of these assertions.

On June 30, 2020, Glenn Roth, Esq., county solicitor, issued a press release regarding Twigg's investigation into Commissioner Halcovage's conduct. Id. ¶ 28.  The press release indicated that Halcovage violated various county policies related to conduct, physical and verbal abuse, and sexual harassment. Id. ¶ 30.  Roth's release stated:

> If this investigation involved a County department head, the department head would be suspended immediately pending investigation followed by a recommendation of employment termination. However, neither County Administration nor other county commissioners may discipline a fellow county commissioner or remove him from office absent criminal conviction or impeachment.
>
> Given that this incident does involve personnel, involves multiple attorneys, and may proceed to litigation, the County may not provide specific details of the allegations made by the Employees or the specific findings of the internal investigation.

Id. (spacing added).

Ultimately, several women employed by the county filed a lawsuit against Halcovage in this federal district court in March 2021, i.e., the Doe Litigation. Id. ¶ 34.  The Doe Litigation plaintiffs also named, among others, Schuylkill County, Roth, and County Administrator Bender as defendants. Id.  Doreen Kutzler is a named defendant in this action.  She too was also named as a defendant in the

Doe Litigation for her role as human resources representative during the period relevant to that case. [2] Id.

Twigg was not named as a defendant in the Doe Litigation. On August 12, 2020, approximately 45 days after the issuance of the above press release, Twigg resigned as county HR Director with an effective date of September 4, 2020. Id. ¶ 29. Twigg's resignation letter stated, in part: "Over the past ten months I have dreaded coming to work almost every day. It is clear that my HR Philosophy is different from the ruling majority at Schuylkill County. Because I have not waivered in my principles, philosophy and/or beliefs, I have suffered instances of undermining, intimidation and manipulation." Id.

Although not explicitly referenced in her letter, Twigg alleges that the above words reflected the circumstances surrounding the allegations against Commissioner Halcovage, the conclusions of her investigation, and fear that she might be scapegoated in any ensuing litigation. Id. ¶ 31. Twigg also alleges that her lack of explicit reference to those circumstances was the result of Roth's press release, which she understood as a directive forbidding county representatives from discussing any details. Id. According to plaintiff, the

---

[2] Defendant Kutzler has filed an answer to Twigg's amended complaint in this action. (Doc. 19).

circumstances of her resignation in September 2020 constitute protected opposition activity under Title VII. Id. ¶ 76.

Afterwards, Twigg remained connected to the Doe Litigation based on her investigation of Commissioner Halcovage during her tenure as Schuylkill County HR Director. Two years after her resignation, on September 15, 2022, Twigg provided testimony before the Pennsylvania House of Representatives subcommittee investigating Commissioner Halcovage, ostensibly as part of possible impeachment proceedings. Id. ¶ 37. In September 2022 and November 2022, Twigg also sat for thirteen (13) hours of deposition testimony in the Doe Litigation. Id. ¶ 38. According to Twigg, her testimony was favorable to the plaintiffs in that action and exposed Schuylkill County, County Administrator Bender, and the other named defendants in this case to civil liability. Id. ¶ 39.

Additionally, in April 2022, the United States Department of Justice ("DOJ") filed a motion to intervene in the Doe Litigation. Id. ¶ 36. On January 13, 2023, Schuylkill County entered into a consent decree with the DOJ. Id. ¶ 41. Among the provisions in the consent decree, Schuylkill County agreed not to engage in any act or practice that discriminates against any employee or applicant on the basis of sex. Id. ¶ 42. Schuylkill County also agreed not to engage in any act or practice that constitutes retaliation in violation of Title VII. Id. Furthermore, the consent decree required Schuylkill County to appoint an EEO officer to ensure

that investigations into prohibited forms of harassment and retaliation occurred in accordance with the terms of the decree. Id.

Twigg has more than thirty (30) years of experience in human resources. Id. ¶ 55.  Plaintiff also contends that her work performance, integrity, and professionalism went unquestioned in her time as county HR Director from January 2018 to September 2020. Id. ¶¶ 23, 29, 33.  Approximately one month after entry of the consent decree, in mid-February 2023, Schuylkill County Commissioner Gary Hess advised Twigg that the county was actively hiring for the HR Director position that plaintiff previously held. Id. ¶ 44.  According to Twigg, she believed that the ongoing Doe Litigation and consent decree would provide protection from discrimination and retaliation and foster a different work environment than when she resigned in 2020. Id. ¶¶ 45–46.

On February 28, 2023, Twigg submitted her resumé to Ann Kraft, a Schuylkill County HR officer and former colleague. Id. ¶ 47.  Kraft advised that she forwarded plaintiff's resumé and five (5) others to County Administrator Bender, per his request to see all resumés immediately. Id. ¶¶ 48–49.  Several days later, Kraft advised Twigg to also submit her resumé and application through a third-party website, Indeed. Id. ¶ 50.  The posted job description specifically stated that the HR Director would report to Defendant Bender. Id. ¶ 51.

On March 7, 2023, Twigg submitted her resumé and application through Indeed as directed. Id. ¶ 52. She received a notification that her application was reviewed the next day. Id. ¶ 53. Nonetheless, on March 20, 2023, Twigg received an email notifying her that she was not selected for an interview. Id. ¶ 54.

On March 21, 2023, Twigg submitted a formal complaint to DOJ attorneys alleging that her non-selection for an interview was in retaliation for her participation in the Doe Litigation. Id. ¶ 58. Twigg requested an investigation pursuant to the terms of the consent decree. Id. In April 2023, Twigg participated in an interview with a DOJ attorney and a separate interview with Schuylkill County's EEO Officer Denise Elliot, Esq., who had been appointed pursuant to the terms of the consent decree. Id. ¶¶ 61–63. In June 2023, EEO Officer Elliot concluded, following an investigation, that the decision not to interview Twigg was made by personnel from Defendant Reading-Berks HR Management, LLC d/b/a Hubric Resources ("Hubric Resources"), not the County Defendants. Id. ¶¶ 64–66. EEO Officer Elliot's report also stated that Hubric Resources consulted with its counsel regarding Twigg's application and determined that she would not be a successful candidate to warrant an interview. Id. ¶ 72. According to Twigg, EEO Officer Elliot determined that Hubric Resources acted in a legitimate, non-discriminatory, and non-retaliatory manner. Id. Nonetheless, in March 2023,

shortly after Twigg was screened out from consideration before an interview, Commissioner Barron Hetherington provided deposition testimony in the Doe Litigation. Id. ¶ 69.  According to Twigg's view of that testimony, Commissioner Hetherington contradicted EEO Officer Elliot's later conclusions. Id. ¶ 70.

Twigg's amended complaint thus asserts three claims.  In Counts I and II, plaintiff contends that Schuylkill County and Hubric Resources retaliated against her in violation of Title VII and the PHRA.  Id. ¶¶ 77–97.  In Count III, plaintiff alleges that all defendants violated the PHRA by aiding and abetting discriminatory conduct, including County Administrator Bender.  Id. ¶¶ 97–100.

In response to the amended complaint, Schuylkill County and County Administrator Bender filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 16).  County Defendants argue that the amended complaint fails to state plausible claims for retaliation against the county and likewise falls short regarding the aiding and abetting claim against Defendant Bender.  In its brief in support, County Defendants request that the court consider the full contents of Twigg's resignation letter and EEO Officer Elliot's report. (Doc. 17 at 2, 4).  In support of their arguments for dismissal, County Defendants also reference several pages of testimony from Commissioner Hetherington's deposition in the Doe Litigation beyond the portion quoted in the amended complaint. Id. at 5–7.

**Jurisdiction**

The court has federal question jurisdiction over plaintiff's Title VII claim. 28 U.S.C. § 1331. The court has supplemental jurisdiction over plaintiff's PHRA claims. 28 U.S.C. § 1367(a).

**Standard of Review**

County Defendants have filed a motion to dismiss for failure to state a claim. To survive a motion to dismiss, "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " Doe v. Princeton Univ., 30 F.4th 335, 341–42 (3d Cir. 2022) (quoting FED. R. CIV. P. 8(a)(2)). This means a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when factual content is pled which allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing Twombly, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

The court evaluates motions to dismiss using a three-step process. The first step involves identifying the elements of each claim. Oldham v. Pennsylvania State Univ., 138 F.4th 731, 743 (3d Cir. 2025) (citation omitted). The second

step involves reviewing the operative pleading and disregarding any formulaic

recitation of the elements of a claim or other legal conclusion, as well as

allegations that are so threadbare or speculative that they fail to cross the line

between the conclusory and factual. See Lutz v. Portfolio Recovery Assocs.,

LLC, 49 F.4th 323, 328 (3d Cir. 2022) (citations and quotation marks omitted).

The third step evaluates the plausibility of the remaining allegations. Id.

In evaluating plausibility of the plaintiffs' allegations, the court accepts all factual

allegations as true, construes the complaint in the light most favorable to the

plaintiffs, and draws all reasonable inferences in the plaintiffs' favor. Id. (citations

omitted).

**Analysis**

   **1. Matters Considered on a Motion to Dismiss**

   As a preliminary matter, County Defendants offer documents to support

their arguments for dismissal: Twigg's resignation letter, EEO Officer Elliot's

report, and portions of Commissioner Hetherington's deposition transcript. (See

Docs. 17-1 to 17-3). "In deciding a Rule 12(b)(6) motion, a court must consider

only the complaint, exhibits attached to the complaint, matters of public record,

as well as undisputedly authentic documents if the complainant's claims are

based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir.

2010) (citing Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d

1192, 1196 (3d Cir. 1993)).  Additionally, "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (cleaned up).

The rationale for the "integral documents exception" is that "it is not unfair to hold a plaintiff accountable for the contents of documents it must have used in framing its complaint, nor should a plaintiff be able to evade accountability for such documents simply by not attaching them to [her] complaint [.]" Schmidt v. Skolas, 770 F.3d 241, 250 (3d Cir. 2014) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426). Id. The critical component "is whether the claims in the complaint are 'based' on an extrinsic document and not whether the extrinsic document was explicitly cited[,]" and a plaintiff "cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426 (citations omitted).

Twigg opposes consideration of her full resignation letter, EEO Officer Elliot's complete report, and portions of Commissioner Hetherington's deposition transcript at this juncture. (Doc. 18-1, Pl. Br. in Opp. at 6–8).  After review of Twigg's allegations and County Defendants' arguments, consideration of these documents might not be fully out-of-bounds at the motion to dismiss stage, but

11

County Defendants proposed use of these documents is premature on a motion to dismiss.

First, per review of her amended complaint, Twigg's retaliation claims are only minimally "based" on her resignation letter. In the amended complaint, Twigg specifically asserts that the following were protected activities: 1) her investigation of sexual misconduct allegations against Halcovage as county HR Director; 2) sustaining those allegations in her findings, 3) opposing such conduct as HR Director; and 4) providing documents and deposition testimony in the Doe Litigation. (Doc. 14, Am. Compl. ¶¶ 80a-e, 90a-e). As noted in the background section, Twigg's resignation letter does not mention her investigation into Halcovage at all. Id. ¶ 31. Rather, plaintiff appears to allege that her investigation and others' handling of the sexual misconduct allegations factored into her resignation, but that she could not refer to that situation in her letter based on the solicitor's press release. Id. at ¶¶ 30–32. One way to construe these allegations is that Twigg is providing context to her other allegations. See id. at ¶¶ 38–39 (alleging she provided favorable deposition testimony to the Doe Litigation plaintiffs). Another possible way involves the plaintiff pleading these facts to get ahead of potential defenses to her current claims, i.e., that the resignation letter might be used to bolster any legitimate, non-retaliatory reasons

proffered by defendants in this litigation. See id. ¶ 30 ("the central conclusion to be drawn from Ms. Twigg's resignation letter is…").

In providing Twigg's full resignation letter, however, County Defendants suggest that the court find and then resolve any conflicts between the allegations and the letter in their favor, that is, consider the full letter to determine the *real* reason for the plaintiff's resignation. (See Doc. 18, Br. in Supp. at 2 ("Plaintiff's resignation letter provides that she resigned over a separate matter in which she was dissatisfied with the County's handling of a different employee's vacation/ sick time."). To the extent that County Defendants argue that Twigg is being duplicitous by not addressing everything in her resignation letter, this manner of proceeding is really an attempt to test plaintiff's credibility on a motion to dismiss. Plaintiff's credibility cannot be weighed at this stage. If Twigg's claims proceed against the County Defendants, Twigg can be questioned at a deposition about the letter and other relevant topics. County Defendants can counter Twigg's testimony about her resignation letter with other evidence. For now, however, the contents of that letter will not be considered.

As for EEO Officer Elliot's full report and the additional portions of Commissioner Hetherington's deposition, those documents will also not be considered. Upon review, Twigg's reference to Elliot's report and Hetherington's deposition is a clear indicator of the plaintiff forecasting certain defenses in this

action, i.e., that Schuylkill County and County Administrator Bender would argue that they were not involved.  By reference to Hetherington's deposition, Twigg's allegations seek to call into question possible defenses from the Elliot report.

Again, however, County Defendants offer the corresponding documents for purposes not contemplated at the motion to dismiss stage. Id. at 10 ("the Court need not accept as true that the County and/or Bender took any action as to Plaintiff. Rather, the contents of the controlling documents contradict Plaintiff's theories against the County and Bender"). EEO Officer Elliot's report is one piece of evidence, which Twigg intends to challenge in this litigation according to her amended complaint.  Commissioner Hetherington's deposition testimony in the Doe Litigation is another piece of evidence, which may permit different inferences.  Consequently, the court declines the County Defendants' invitation to look beyond the allegations of Twigg's amended complaint for the purposes of resolving their motion to dismiss.

Turning to other matters raised in County Defendants' motion, Twigg's amended complaint asserts retaliation claims against Schuylkill County under Title VII and the PHRA.  Twigg also claims that all defendants violated the PHRA when they aided and abetted discrimination.  County Defendants raise three alternative arguments, that is: 1) Twigg failed to allege a sufficient adverse employment action to support her retaliation claims against Defendant Schuylkill

14

County; 2) Twigg failed, in various ways, to state an aiding and abetting claim against Defendant Bender; and 3) Twigg failed to allege facts supporting a joint employer relationship between Schuylkill County and Defendant Hubric Resources.

### 2. Whether Plaintiff Experienced Adverse Action

Plaintiff's retaliation claims are cognizable under Title VII and the PHRA.[3] Canada v. Samuel Grossi & Sons, Inc., 49 F.4th 340, 346 (3d Cir. 2022); Connelly v. Lane Const. Corp., 809 F.3d 780, 791 (3d Cir. 2016). Twigg's retaliation claims survive a motion to dismiss "if she pleads sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action." Connelly, 809 F.3d at 789 (citation omitted).

---

[3] Title VII makes it unlawful "for an employer to discriminate against any of his…applicants for employment… because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3. Similarly, the PHRA makes it unlawful "[f]or any person [or] employer, to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act." 43 PA. STAT. § 955(d). The court will evaluate Twigg's Title VII and the PHRA retaliation claims together because the same framework applies to both. Connelly, 809 F.3d at 791, n. 9; Burton v. Teleflex Inc., 707 F.3d 417, 432 (3d Cir. 2013).

County Defendants argue that the amended complaint fails to allege facts supporting the adverse action element because Twigg's retaliation claim only encompasses a decision not to interview the plaintiff.  Under the law, an "adverse employment action" is an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co., 548 U.S. 53, 68 (2006) (cleaned up).  Furthermore, "the significance of any given act of retaliation will often depend upon the particular circumstances" in a particular context. Id. at 69.

For her part, Twigg has provided sufficient context to make her failure-to-interview/failure-to-hire retaliation claims plausible.  That is, plaintiff has alleged that she possesses decades of HR experience and served in the county's HR Director role previously.  At the same time, Twigg has provided allegations that she sided with employees who accused a county commissioner of sexual misconduct and exposed the defendants to civil liability through her testimony in the Doe Litigation.  The amended complaint provides enough detail to raise a reasonable expectation that discovery will reveal evidence supporting claims that the County Defendants were motivated in their decision-making by plaintiff's protected activity.  Moreover, per the allegations, it is plausible that a reasonable person would not have opposed alleged sexual misconduct by organizational leadership or supported lesser-ranking individuals advancing those allegations if

16

it would cause that person to be foreclosed from working for that organization ever again. In light of Twigg's allegations, all of the moving defendants' arguments about their non-involvement in decisions about the plaintiff or the non-retaliatory reasons behind the decisions are matters for another day. Accordingly, County Defendants' motion to dismiss plaintiff's Title VII and PHRA retaliation claims will be denied.

### 3. Plaintiff's PHRA Aiding and Abetting Claim

In Count III of the amended complaint, Twigg asserts that County Administrator Bender violated the PHRA by aiding and abetting discrimination. Like Title VII, the PHRA prohibits discrimination in employment matters because of a person's sex. See 43 PA. STAT. § 953. Under the PHRA, it is an unlawful discriminatory practice "[f]or any person [or] employer…to aid, abet, incite, compel or coerce the doing of any act" declared by the PHRA to be an unlawful discriminatory practice, "or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice." 43 PA. STAT. § 955(e). In turn, the PHRA declares discrimination against individuals opposing sex discrimination and other retaliatory measures to be unlawful discriminatory practices. 43 PA. STAT. § 955(a), (d). The PHRA thus contemplates liability that extends beyond Title VII

to individual defendants such as County Administrator Bender. See Dici v. Commw. of Pa., 91 F.3d 542, 552 (3d Cir. 1996).

According to the County Defendants, Twigg's allegations against County Administrator Bender fall short of plausibly.[4]  After review, however, the court disagrees with County Defendants' assessment of the allegations in the amended complaint.

First, County Defendants' briefing ignores several other allegations advanced against Bender.  For example, Twigg alleges that her former colleague in the county HR office, Ann Kraft, relayed information about Bender to the plaintiff regarding the HR Director hiring process. (Doc. 14, Am. Compl. ¶¶ 48–49).  Specifically, Kraft advised Twigg that she forwarded plaintiff's resumé to Bender because he wanted to see all resumés immediately. Id.  Per Twigg, a job posting for the HR Director position also indicated that the position would report to the County Administrator, i.e., Bender. Id. ¶ 50. Second, County Defendants' position ignores the context supplied by other factual allegations.  For example, Twigg contends that Bender, among others, would be aware of plaintiff's investigation into sexual misconduct of a county commissioner in 2020 and her testimony in the Doe Litigation in 2022. Id. ¶ 67.  Twigg takes the position that

---

[4] Based on the conclusion in Section 2 of this memorandum, the court need not address County Defendants' arguments that plaintiff failed to allege an underlying violation of the PHRA.

her testimony in the Doe Litigation exposed Bender to civil liability in that action. Id.  Given these allegations, Twigg alleges that Defendant Bender had knowledge of her application for the HR Director position in 2023 and either directed the decision to reject plaintiff's application or ratified a decision made by others. Id. ¶ 68.  Finally, plaintiff takes the position that Commissioner Hetherington testified in a manner supporting her allegations about Bender's knowledge of her application and involvement in the decision to screen out her candidacy.  Although County Defendants take a contrary view, the sum of Twigg's allegations against Bender make her aiding and abetting claim plausible. Consequently, the motion to dismiss the PHRA aiding and abetting claim will be denied.

### 4. Joint Employer Theory

Finally, moving defendants assert that Twigg cannot sustain her claims using a theory that Schuylkill County and Hubric Resources were joint employers. (Doc. 20, Def. Reply Br. at 4–5).  This argument requires additional discussion about the alleged relationship between these two defendants not addressed above.

Twigg's amended complaint posits that Hubric Resources provided human resources consulting services to Schuylkill County and was authorized to make employment decisions. (Doc. 14, Am. Compl. ¶ 17).  Additionally, plaintiff alleges

that Defendant Kutzler, an employee of Hubric Resources, acted as the HR Director for Schuylkill County with authority from Schuylkill County to make employment decisions. Id. ¶¶ 18, 19. According to Twigg, this relationship between Schuylkill County and Hubric Resources factored into the Doe Litigation. See id. at ¶ 34 (alleging that the plaintiffs named Kutzler as a defendant in that case); ¶ 39 (alleging that Twigg's testimony in the Doe Litigation exposed Kutzler to civil liability). Furthermore, per the reference to EEO Officer Elliot's report in the amended complaint and other allegations attempting to call that report into question, Defendant Kutzler may have decided not to interview Twigg for the job of replacing Kutzler with or without the input of the County Defendants. Id. ¶¶ 72, 82.

A county may share co-employer or joint employer status with another entity for the purposes of a Title VII claim. See Graves v. Lowery, 117 F.3d 723, 727 (3d Cir. 1997). However, "the precise contours of an employment relationship can only be established by a careful factual inquiry." Id. at 729 (citations omitted). Thus, any arguments challenging Twigg's joint employer allegations are better addressed following discovery, where the court has a better understanding of the relationship between Schuylkill County and Hubric Resources and further appreciation of the roles the various defendants played, if any, in rejecting plaintiff's desire to rejoin the county as its HR Director.

Consequently, the challenges to Twigg's theories of liability against County

Defendants are rejected at this point in the litigation.

**Conclusion**

    For the reasons set forth above, County Defendants' motion to dismiss will

be denied.  An appropriate order follows.

Date: _9/18/25_

JUDGE JULIA K. MUNLEY
United States District Court